**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| MARK ABSHIRE, ET AL. | CIVIL ACTION NO. 18–0205 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| RICKEY BOUDREAUX, ET AL. | MAGISTRATE JUDGE WHITEHURST |

### MEMORANDUM RULING

Before the Court are a Motion to Dismiss and a Motion to Strike,[1] both filed by Defendants, the City of Youngsville, Officer Richard Vincent, individually and in his official capacity as a police officer for the City of Youngsville, Chief Rickey Boudreaux, individually and in his official capacity as Chief of Police of the City of Youngsville, and Atlantic Specialty Insurance Company (hereinafter collectively referred to as the "Youngsville Defendants"). See Record Documents 9 and 11.[2] For the reasons which follow, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** and the Motion to Strike is **DENIED**.

### BACKGROUND

The factual allegations contained in the complaint are accepted as true and are as follows.[3] The plaintiff, Mark Abshire ("Abshire"), filed suit on behalf of his minor son, "T.A."

---

[1]The Youngsville Defendants have also filed a Motion to Dismiss Penalty, Punitive, or Exemplary Damages, which is addressed in a separate order. See Record Document 10.

[2]The remaining defendant, the Lafayette Parish School Board, has also filed a Motion to Dismiss, which is addressed in a separate ruling. See Record Document 7.

[3]"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citations omitted).

See Record Document 1. T.A. attends high school in Youngsville, Louisiana, which is within the Lafayette Parish School District. Pursuant to an Intergovernmental Agreement for School Resource Officer ("SRO") services entered into between the Lafayette Parish School Board and the City of Youngsville, Officer Richard Vincent ("Officer Vincent"), alleged by Abshire to be an employee of the City of Youngsville and/or the Youngsville Police Department, was assigned to T.A.'s school as its SRO. See id.[4] Abshire alleges that in October of 2017, an instructor at the school directed T.A. to leave class for being loud. Once in the hallway, the teacher called Officer Vincent, who escorted T.A. to the office. Id. at 3-4 ¶ 9. When they arrived at the office, T.A. began to speak to a school official to explain what occurred, but Officer Vincent told T.A. to shut up and "suddenly and without warning slapped him acorss [sic] the face." Id. at 4 ¶ 10. On November 2, 2017, the same teacher directed T.A. to leave class and go to a "common area outside of the classroom known as the 'neighborhood' to complete his work." Id. at 4 ¶ 13. Officer Vincent arrived in the area a short while later and "slapped T.A. in the face several times and instructed him 'do your work.'" Id. Later that same day, a different teacher called for Officer Vincent over the intercom. While T.A. was seated in the classroom, Officer Vincent entered and instructed T.A. to leave. As T.A. was gathering his things, Officer Vincent told him to "come" and "quit being slow." Id. at 4-5 ¶ 14. Abshire asserts that then "suddenly and without warning Officer Vincent picked T.A. off the ground by his book sack and removed him from the classroom." Id.

Abshire alleges that the "force used by Richard Vincent was excessive under the

---

[4] The language of the Intergovernmental Agreement vacillates between referring to the school resource officers as SROs and SRO's.

circumstances and was carried out maliciously and sadisticly [sic] in violation of T.A.'s civil rights." Id. at 5 ¶ 16. He further contends that it "is a common pattern, practice and custom for Lafayette School Board staff to call SRO's to respond and intervene in matters that do not involve and [sic] criminal activity or alleged criminal activity," that it "is a common pattern, practice and custom for Lafayette Parish School Board staff to call SRO's to respond and enforce school policy," and that it "is a common pattern, practice and custom for Lafayette Parish School Board staff to utilize SRO's to inflict corporal punishment on students as a means of marinating [sic] order in direct contradiction to its written policy." Id. at 7 ¶¶ 23-25. Abshire specifically asserts:

> At all times relevant to this lawsuit, Officer Vincent and other SRO's, like all Youngsville Police Department officers, received training in use of force, restraint, handcuffing, and arrest techniques designed for use on adults. They did not receive training on use of force, restraint, handcuffing, arrest, negotiation, de-escalation, and conflict resolution techniques that are appropriate for use on children, people of small stature, or in school environments.

Id. at 9 ¶ 32.

Abshire filed suit arising out of alleged violations of T.A.'s civil rights, specifically the use of excessive force in violation of the Fourth Amendment. See id. at 19. He also asserts claims of assault and battery and intentional infliction of emotional distress. See id. at 21-22. Relevant to the instant motion, he asserted a claim for municipal liability and failure to investigate, train or supervise against the Youngsville Defendants. The Youngsville Defendants have now moved to dismiss Abshire's claims against them, asserting that (1) Abshire has not sufficiently pled a Monell claim, (2) Abshire has failed to state a claim against Chief Boudreaux in his individual capacity; (3) Abshire has failed to

state a claim for failure to investigate; and (4) Abshire's claims against Chief Boudreaux and Officer Vincent in their official capacities should be dismissed because such claims are redundant. See Record Document 11 at 2. Abshire filed an opposition, wherein he noted that he had not asserted claims against Chief Rickey Boudreaux in his individual capacity. See Record Document 19. He opposed the 12(b)(6) dismissal on all other bases. The Youngsville Defendants filed a reply. See Record Document 27.

After briefing of the motion to dismiss was complete, Abshire sought leave to file a Second Amended Complaint, which was granted. See Record Documents 32-33. In his amended complaint, Abshire added allegations against Chief Rickey Boudreaux in his individual capacity. See Record Document 34. Thereafter, this Court allowed the defendants to supplement their briefing to address the issues presented in the amended complaint and Abshire filed oppositions to the supplemental briefs. See Record Documents 36-40.

As to the Motion to Strike, the Youngsville Defendants contend that certain paragraphs of Abshire's complaint should be striken as redundant, immaterial, impertinent, and scandalous. Abshire filed an opposition and the Youngsville Defendants filed a reply. See Record Documents 9, 20 and 29.

## LAW AND ANALYSIS

**I.     Pleading Standards And The Rule 12(b)(6) Standard.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard

found in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cnty., Tex., 981 F.2d 237, 243 (5th Cir. 1993) (citation omitted). However, a court may rely upon "documents incorporated into the complaint by reference [] and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted); see Fed. R. Evid. 201. Additionally, courts must accept all allegations in a complaint as true. See Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.

A motion to dismiss is "viewed with disfavor and is rarely granted." Turner v. Pleasant, 663 F.3d 770, 775 (5th Cir. 2011), quoting Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. To satisfy this standard, the complaint must provide more than conclusions, but it "need not contain detailed factual allegations." Colony Ins. Co. v. Peachtree Constr., Ltd., 647 F.3d 248, 252 (5th Cir. 2011). However, it must allege

enough facts to move the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. Determining whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679, 129 S. Ct. at 1950.

II.     **Section 1983/Monell Claims Against Local Governments.**

Title 42, United States Code, Section 1983 provides a claim against anyone who, under color of state law, deprives another of his or her constitutional rights. In Monell v. Department of Social Services of the City of New York., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978), the Supreme Court held that Congress intended Section 1983 to apply to local government entities as well as to persons. The Monell Court further held that municipalities and local government agencies cannot be held liable for constitutional torts under Section 1983 pursuant to a theory of respondeat superior, but they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. Therefore, to succeed on a Monell claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. See Fuentes v. Nueces Cnty., Tex., 689 F. App'x 775, 777 (5th Cir. 2017), quoting Valle v. City of Hous., 613 F.3d 536, 541-42 (5th Cir. 2010). Locating an official policy or custom ensures that a local government entity will be held liable only for violations of constitutional rights that resulted from the decisions of those officials whose acts may fairly be said to be those of the government entity itself.

See Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04, 117 S. Ct. 1832, 1388 (1997).

III.   Analysis.

  A.   **Municipal Liability--Official Policy Or Custom.**[5]

Existence of a policy or custom may be established in primarily two ways: (1) the existence of an officially adopted policy, regulation, or decision promulgated by individuals with policymaking authority; or (2) "a persistent, widespread practice of [] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." Harris v. Jackson Cnty. Miss., 684 F. App'x 459, 463 (5th Cir. 2017), quoting Piotrowski v. City of Hous., 237 F.3d 567, 579 (5th Cir. 2001). A "customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 169 (5th Cir. 2010), citing Webster v. City of Hous., 735 F.2d 838, 842 (5th Cir. 1984) (en banc).

The Youngsville Defendants argue that Abshire has "put forth no statement of particularized facts [] of a 'custom' or 'policy' of the City of Youngsville to indicate that there

---

[5]As mentioned, municipal liability under Section 1983 requires proof of three elements: a policymaker, an official policy and a violation of constitutional rights whose moving force is the policy or custom. See Piotrowski v. City of Hous., 237 F.3d 567, 578 (5th Cir. 2001). No argument was made by the Youngsville Defendants regarding the policymaker aspect of Abshire's Monell claim. Furthermore, they did not make any legal argument regarding moving force.

was a custom or policy for failure to train or supervise." Record Document 11 at 7.[6] They contend that Abshire's "attempt to establish a claim with use of buzz words is insufficient to state a cause of action, without identifying any real, hard facts to establish such a policy, practice, or custom." Id. This Court, however, disagrees with their view of Abshire's allegations. In his complaint, Abshire alleges, inter alia, that the City and Chief Boudreaux failed to modify their training on use of force from dealing with adults to accommodating children in school environments, or provide additional training as to such. See id. at 9 ¶ 33. He further asserts that the City and Chief Boudreaux "have a policy based in custom [] in which they deploy SROs to incidents that do not involve criminal matters and where there is no threat of imminent physical harm or of serious property destruction" and that SROs are routinely called upon to "handle minor school discipline issues." Id. at 11 ¶ 38-39.

Considering Abshire's complaint as a whole, he has plausibly alleged facts which suggest, but do not prove, that the Youngsville Defendants may have legal liability. He has provided fair notice to them of the nature of his claim and the ground on which it rests. See Twombly, 550 U.S. at 555 n.3, 127 S. Ct. at 1965 n.3. At this stage of pleading, Abshire need only sufficiently inform the defendants of the nature of his claim and persuade this Court that his complaint states a plausible claim for relief. He has done so. Whether or not he is able to muster evidence of the actual existence of such a policy or custom is a hurdle he will have to clear should the defendants move for summary judgment. This Court's duty is to "determine whether the plaintiff stated a legally cognizable claim that is

---

[6]The Youngsville Defendants' arguments toggle back and forth between discussing policy or custom and failure to train. See Record Document 11 at 4.

plausible, not to evaluate the plaintiff's likelihood of success." Thompson v. City of Waco, Tex., 764 F.3d 500, 503 (5th Cir. 2014) (quotation and citation omitted). While Abshire may not ultimately prevail, he has alleged enough factual content to nudge his claims "across the line from conceivable to plausible." Iqbal, 556 U.S. at 680, 129 S. Ct. at 1950-51, quoting Twombly, 550 U.S. at 570, 127 S. Ct. at 1974.

### B. Failure To Train, Supervise And/Or Discipline.

The Supreme Court established the failure to train theory of proving municipal liability in City of Canton v. Harris, 489 U.S. 378, 386-92, 109 S. Ct. 1197, 1203-07 (1989). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of [Section] 1983." Connick v. Thompson, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359 (2011). In Pena v. City of Rio Grande City, Texas, 879 F.3d 613 (5th Cir. 2018), the Fifth Circuit reviewed the standard for a failure to train claim, requiring a plaintiff to prove that "1) the [defendants] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." Pena, 879 F.3d at 623, quoting Thompson v. Upshur Cnty., 245 F.3d 447, 459 (5th Cir. 2001). As to the third element,[7] deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 563 U.S. at 61, 131 S. Ct. at 1360, quoting Bd. of Comm'rs of Bryan Cnty., 520 U.S. at 410,

---

[7]The Youngsville Defendants devoted little argument to the remaining two elements.

117 S. Ct. at 1391. However, when policymakers are on "actual or constructive notice that a particular omission in their training program causes [] employees to violate citizens' constitutional rights, [a municipality] may be deemed deliberately indifferent if the policymakers choose to retain that program." Id., citing Bd. of Comm'rs of Bryan Cnty., 520 U.S. at 407, 117 S. Ct. at 1390.

The Supreme Court in Canton provided two ways of proving deliberate indifference. There will be times that municipal employees "will violate constitutional rights 'so often' that the factfinder can infer from the pattern of violations that 'the need for further training must have been plainly obvious to the . . . policymakers.'" Littell v. Hous. Indep. Sch. Dist., 894 F.3d 616, 624 (5th Cir. 2018), quoting Canton, 489 U.S. at 390 n. 10, 109 S. Ct. at 1205 n. 10. However, "even absent proof of a pattern, deliberate indifference can still be inferred if the factfinder determines that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." Id., citing Bd. of Comm'rs of Bryan Cnty., 520 U.S. at 409, 117 S. Ct. at 1391.

In their motion to dismiss, the Youngsville Defendants spend the majority of their legal argument attacking Abshire's complaint for failing to state a claim for failure to train or supervise. More specifically, they contend that Abshire has failed to allege a pattern that would meet the deliberate indifference standard.[8] They summarily conclude that Abshire

---

[8]The Youngsville Defendants also briefly argued that there "are no allegations whatsoever that specify **how** the City of Youngsville or Chief Rickey Boudreaux failed to train and supervise," citing Snyder v. Trepagnier, 142 F.3d 791, 798 (5th Cir. 1998). Record Document 11 at 8 (emphasis in original). Tellingly, Snyder, like many other cases cited by the Youngsville Defendants in support of their motion, was decided on summary judgment and not at the pleadings stage of the proceedings.

"has not set forth any pattern of deliberate indifference as to the ***City of Youngsville*** or ***Chief Rickey Boudreaux during his tenure as Chief for the Youngsville Police Department***, and thus fails to state a valid *Monell* claim." Record Document 11 at 7 (emphasis in original). They additionally argue that Abshire's complaint "lacks any specific allegations regarding deficiencies in the SRO Program, or violations thereof, or that the City of Youngsville failed to adequately train and supervise (or a pattern thereof)." Id. at 8. Not only are their arguments as to these issues conclusory, the Court, at this stage of the pleadings, disagrees.[9]

A review of the complaint reveals that the arguments regarding the alleged deficiencies therein are simply inaccurate. For example, Abshire's complaint alleges that the City of Youngsville and Chief Boudreaux were responsible for the job-related training of SROs and they had "reason to know and did know that Officer Vincent would come into physical contact with schoolchildren . . . and would use force." Record Document 1 at 12-13 ¶ 43. Abshire further asserts in his complaint that

> [d]espite this knowledge, the City of Youngsville and Chief Rickey Boudreaux failed to train Officer Vincent [] on how to modify use of force and restraint techniques for children. The City of Youngsville and Chief Rickey Boudreaux failed to train Officer Vincent on de-escalation and negotiation with youth, communicating with young children, use of force and restraint

---

[9]The Youngsville Defendants also contend that Abshire is attempting to establish the deliberate indifference of Chief Boudreaux by inappropriately referring to instances which allegedly occurred while he was employed by the Iberia Parish Sheriff's Office. They argue that these references to such a pattern are "misplaced, irrelevant, and [have] no bearing on this suit." Record Document 11 at 7. The allegations to which they refer are the subject of the Motion To Strike, which is addressed infra, and is denied by the court. Therefore, their attempt to remove these allegations from the analysis of whether Abshire has stated a claim is unavailing.

> on children and in a school environment, and child and adolescent development and behavior. Indeed, the City of Youngsville and Chief Rickey Boudreaux had no written training materials on these topics, at all times relevant to this complaint. As a highly predictable result of the City of Youngsville and Chief Rickey Boudreaux['s] failure to train, Officer Vincent used excessive force on T.A.

Id. at 13 ¶ 44. Additionally, Abshire alleges that Chief Boudreaux "receive[s] regular incident reports from SROs and as such [is] aware of SROs' involvement in minor school discipline issues that do not involve criminal matters, and where there is no threat of imminent physical harm or serious property destruction" and that Chief Boudreaux "knew or should have known of SRO uses of force, since [he] oversaw the SRO program and reviewed SRO incident reports, including Officer Vincent's reports." Id. at 12 ¶¶ 41 and 44.

The Court must not convert the plausibility requirement of pleading into an analysis of whether Abshire is likely to succeed on the merits. See Twombly, 550 U.S. at 556, 127 S.Ct. at 1965 ("[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."). Abshire has provided more than a boilerplate recitation of the grounds for municipal liability and has made, albeit scant, some additional allegations to put the defendants on fair notice of the grounds for which they are being sued. At this stage, Abshire is only required to plead a plausible cause of action. This conclusion in no way determines Abshire's ultimate success.

In addition, this Court is hesitant to dismiss a claim at this stage of pleading considering the minimal legal argument that was made by the Youngsville Defendants in support of their position. While there is not as much factual detail set forth in Abshire's

complaint as might be ideal, his allegations are sufficient to state a plausible claim against the Youngsville Defendants for failure to train. Abshire's complaint meets Rule 8's requirement of a short and plain statement of the claim. A complaint may proceed even if "recovery is very remote and unlikely," so long as the alleged facts "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56, 127 S. Ct. at 1965 (citation omitted).

### IV. Claims Against Chief Boudreaux And Officer Vincent In Their Official Capacities.

Abshire's complaint names as defendants Chief Boudreaux, in his official capacity as the Chief of Police for the City of Youngsville and Officer Vincent, individually and in his official capacity as a police officer for the City of Youngsville. He has also sued the City of Youngsville. See Record Document 1. The Youngsville Defendants argue that the official capacity claims against Chief Boudreaux and Officer Vincent are redundant and should be dismissed. The Court agrees.

Official capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 3105 (1985), quoting Monell, 436 U.S. at 690 n. 55, 98 S. Ct. at 2035 n. 55. A judgment in a lawsuit filed under Section 1983 against an official in his official capacity imposes liability against the entity he represents. Therefore, such suits are "only another way of pleading an action against an entity of which an officer is an

agent." Id. at 165, 105 S. Ct. at 3105; see also Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005) (citation omitted).

Courts have held that when the government entity itself is a defendant, claims against entity members/officers in their official capacities are redundant and appropriate for dismissal. See Castro Romero v. Becken, 256 F.3d 349, 355 (5th Cir. 2001) ("The district court was also correct in dismissing the allegations against all of the municipal officers . . . in their official capacities, as these allegations duplicate claims against the respective governmental entities themselves."); Deshotels v. Vill. of Pine Prairie, No. 11-2052, 2012 WL 1712358 (W.D. La. April 13, 2012). In Deshotels, the court reasoned that "[s]ince the local government unit can be sued directly, there is no need to bring official-capacity actions against local government officials, and the plaintiff would not be prejudiced by the dismissal of the individual defendants in their official capacities." Deshotels, 2012 WL 1712358, at *4.

In the instant case, the City of Youngsville is named as a defendant. The claims by Abshire pursuant to Section 1983 against Chief Boudreaux as the Chief of Police and Officer Vincent as a police officer are claims against them in their official capacities and are redundant of the claims brought against the City of Youngsville. Therefore, those claims shall be dismissed.

**V.    Claims Against Chief Boudreaux In His Individual Capacity.**

In their motion to dismiss, the Youngsville Defendants sought dismissal of claims against Chief Boudreaux in his individual capacity. See Record Document 11 at 8-10.

Abshire accurately responded that he had not asserted claims against Chief Boudreaux in his individual capacity. See Record Document 19 at 9-10. Subsequent to the filing of the Youngsville Defendants' motion to dismiss, however, Abshire amended his complaint to add claims against Chief Boudreaux in his individual capacity, and the Youngsville Defendants responded with a supplemental brief addressing these claims. See Record Documents 34 and 37.

To establish an individual liability claim under Section 1983, Abshire must show that Chief Boudreaux was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the alleged constitutional deprivation. See Jones v. Lowndes Cnty., Miss., 678 F.3d 344, 349 (5th Cir. 2012). Supervisory officials such as Chief Boudreaux cannot be held liable under Section 1983 for the actions of their subordinates under any theory of vicarious liability. See Johnson v. Thibodaux City, 887 F.3d 726, 732 n.4 (5th Cir. 2018), citing Turner v. Lt. Driver, 848 F.3d 678, 695-96 (5th Cir. 2017). A supervisory official may also be liable under Section 1983 if he implemented a policy so deficient that the policy itself acts as a deprivation of constitutional rights. See Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987).

The Youngsville Defendants are correct that there is no allegation that Chief Boudreaux personally participated in any of the alleged incidents that occurred at the school. It is alleged, however, that Chief Boudreaux devised or implemented one or more policies, or failed to implement appropriate polices, that led to the purported constitutional violations. Abshire has asserted that Chief Boudreaux's "adoption and implementation of the school resource officer intergovernmental agreement foreseeably result[ed] in Officer

Vincent's use of force on T.A." Record Document 34 at 2 ¶ 19. He has further alleged that Chief Boudreaux "failed to adopt adequate policies and procedures related to school resource officers," and that he "made a conscious decision in failing to provide guidance or restrictions on use of force and arrests by SROs; failing to modify the Youngsville Police Department's use of force and arrest policies meant for adults; and failing to require relevant training of SRO's." Id. at 3 ¶¶ 30-31. Supervisory liability may exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Cozzo v. Tangipahoa Parish Council–President Government, 279 F.3d 273, 289 (5th Cir. 2002) (quotations and citation omitted). Once again, the Court notes that, at this stage of the proceedings, Abshire need only sufficiently inform the defendants of the nature of his claim and persuade this Court that his complaint states a plausible claim for relief. He has alleged enough factual content to nudge his claims "across the line from conceivable to plausible." Iqbal, 556 U.S. at 680, 129 S. Ct. at 1950-51, quoting Twombly, 550 U.S. at 570, 127 S. Ct. at 1974.

## VI.     Motion To Strike.

The Youngsville Defendants have also filed a Motion to Strike, wherein they contend that certain paragraphs of Abshire's complaint should be stricken due to violations of Federal Rule of Civil Procedure 12(f). Rule 12(f) authorizes a court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Fifth Circuit has stated that motions to strike are generally disfavored. See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale

Shipyards, 677 F.2d 1045, 1057 (5th Cir. 1982); U.S. v. Cushman & Wakefield, Inc., 275 F.Supp.2d 763, 767 (N.D. Tex. 2002), citing Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla., 306 F.2d 862, 868 (5th Cir. 1962) ("Motions to strike are disfavored and infrequently granted.").

The Youngsville Defendants assert that the allegations contained in paragraphs 57 through 66 of Abshire's complaint "amount to scandalous inflamatory [sic] gossip, and which in no way have any bearing whatsoever as to any of the policies and procedures of the Youngsville Police Department or The City of Youngsville as it relates to a Monell claim against them." Record Document 9 at 2. In attempting to plead a claim of municipal liability pursuant to Monell, Abshire makes several allegations in his complaint against Chief Boudreaux that are at issue. Abshire begins by asserting that "[t]here is a well-documented history of Chief Rickey Boudreaux's failure to train, supervise, investigate, discipline and downright condone unjustified acts of physical force upon others." Record Document 1 at 17 ¶ 56. Thereafter, Abshire lists various acts that allegedly involved Chief Boudreaux's previous employment for the Iberia Parish Sheriff's Office but that he contends are relevant to his Monell claims. See id. at 17-18 ¶¶ 57-66. The Youngsville Defendants assert that these allegations against Chief Boudreaux are "prejudicial, immaterial to the pending lawsuit and have 'no possible bearing on the subject matter of the litigation.'" Record Document 9 at 4 (quoting Sadler v. Benson Motors Corp., No. 97-1083, 1997 WL 266735, at *1 (E.D. La. May 15, 1997)).

As previously mentioned, motions to strike are generally disfavored. At this stage of the litigation, the Court cannot say that the allegations are redundant, immaterial,

impertinent or scandalous. The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other unnecessary notoriety. See C. Wright & A. Miller, 5C Fed. Prac. & Proc. 3d § 1382. "A complaint, even in a civil action, necessarily attempts to cast [the] defendant in a bad light of some sort." Succession of Wardlaw, No. 94-2026, 1994 WL 479183, at *1 (E.D. La. Aug. 30, 1994). The Youngsville Defendants will certainly be allowed to revisit the issue through the filing of future motions that could prohibit these matters from being presented to a jury. However, their current arguments do not support striking the allegations from the complaint itself. They simply have not demonstrated grounds to support the rare and sparingly granted motion to strike. Accordingly, the motion to strike paragraphs 57 through 66 of Abshire's complaint is **DENIED**.

## CONCLUSION

Based on the foregoing analysis, the Motion to Dismiss (Record Document 11) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** to the extent that all official capacity claims under 42 U.S.C. § 1983 against Chief Rickey Boudreaux and Officer Richard Vincent are dismissed with prejudice. It is **DENIED** in all other respects.[10]

---

[10]Abshire has requested "only in the alternative, if the Court believes that Mr. Abshire's allegations underlying his municipal-liability claim are not sufficiently particularized, the Court should not dismiss that claim but rather should first give Mr. Abshire an opportunity to conduct discovery and amend his pleadings." Record Document 19 at 12. As this Court has not dismissed Abshire's municipal liability claims pursuant to the instant motion, this request is **MOOT**.

Furthermore, the Motion To Strike (Record Document 9) is **DENIED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26th day of October, 2018.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT